IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BRANDON SCOTT HEAPS, | | |
| | * | |
| Plaintiff | | |
| | * | |
| v. | | Civil Action No.:  RDB-05-1500 |
| | * | |
| GENERAL MOTORS CORPORATION, | | |
| | * | |
| Defendant. | | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

<u>MEMORANDUM OPINION</u>

This action arises from a Complaint that Brandon Scott Heaps ("Plaintiff") filed against General Motors Corporation ("Defendant").  Plaintiff alleges that Defendant sold him a car that failed to start on a consistent basis.  By failing to correct this defective condition, Plaintiff contends that Defendant has violated the Maryland Automotive Warranty Enforcement Act, MD. CODE ANN., COM. LAW § 14-1501 *et seq*., the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. §§ 2301, *et seq*., and the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101, *et seq*.

Currently pending before this Court is Defendant's Motion for Summary Judgment. Defendant argues that judgment should be entered in its favor for three reasons:  First, Plaintiff cannot forecast any evidence with respect to the existence of a manufacturing defect in Plaintiff's car.  Second, critical opinions submitted by Plaintiff's expert are inadmissible under the Federal Rules of Evidence.  Third, there is no evidence in the record that Defendant has failed to comply with its warranty obligations.  In light of the allegations made with respect to the Magnuson- Moss Warranty Improvement Act, this Court has jurisdiction over this matter

pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is

necessary. *See* Local Rule 105.6 (D. Md. 2004).[1] For the following reasons, Defendant's

Motion for Summary Judgment is GRANTED.

<u>BACKGROUND</u>

On October 21, 2004, Plaintiff purchased a new 2005 Chevrolet Corvette manufactured

by Defendant for $67,629.80. (Pl. Compl. ¶¶ 3 & 5; Pl. Ex. A, Copy of Sales Contract.) The

contract included an express three-year/36,000 mile warranty, and Plaintiff purchased an

extended warranty covering five years and 60,000 miles. (Pl. Compl. ¶ 8; Pl. Dep. 104:9-16.)

When Plaintiff purchased the vehicle, the "instrument cluster" was not working, but the dealer

fixed that problem a few days later. (Pl. Compl. ¶ 24; Pl. Ex. B, Copy of Repair Report.)

On November 15, 2004, Plaintiff could not start the car and had it towed to Defendant's

authorized dealer. (Pl. Compl. ¶ 25; Turner Dep. 89:16-18; Pl. Ex. C, Copy of Repair Report.)

At the time, the odometer read 600 miles. (*Id.*) Although repaired, the car would not start again

on January 17, 2005 (when the odometer read 1,792 miles) and February 10, 2005 (when the

odometer read 1,800 miles). (Pl. Compl. ¶¶ 26-27; Pl. Ex. D; Pl. Ex. E.) On each of these

occasions, Defendant's authorized dealer inspected the car, found no mechanical issue, and

"corrected" the problem by recharging the battery. (*Id.*)

When Plaintiff visited Defendant's authorized dealer in February 2005, the mechanic

reviewed the shut-down procedure with Plaintiff, and reminded Plaintiff that if a driver does not

shut down a Corvette properly by putting the gear shift into reverse, the car will remain

---

[1] On August 22, 2005, this Court conducted a brief telephonic hearing on the record to determine whether Plaintiff's vehicle currently suffers from the alleged defect or condition and to address certain jurisdictional matters.

"powered up" and drain the battery even while appearing to be shut down.  (*See* Def. Mem. Supp. Sum. J. p. 5.)  Plaintiff contends that he reviewed the shut-down procedure when the car was purchased and reviewed the same procedure in the owner's manual at a later time.  (Pl. Dep. 41:6-20.)

After the third non-starting incident in February 2005, Plaintiff experienced no problems with the car until August 25, 2005, when it did not start for a fourth time.  (Pl. Dep. 103:13-18; Turner Aff. 90:12-91:5.)  At his deposition on November 7, 2005, Plaintiff reported no problems with the car since the August incident.  (Pl. Dep. 103:13-18).  During a brief telephonic hearing conducted by this Court on August 22, 2006, counsel for Plaintiff indicated that there is no documentation of any failure to start problem since August 2005.[2]

Plaintiff's expert—Scot Andrew Turner—briefly inspected the car in October 2005 by looking under the hood and noticing that "[a]ppearance wise," the battery looked "like any other battery."  (Turner Dep. 106:2-3.)  Mr. Turner did not road-test the car or use any equipment to perform diagnostic tests.  (*Id.*)  He spoke with Plaintiff about Plaintiff's use of the car, and states in his affidavit that he does not believe the car's problems arise from any misuse by Plaintiff. (Turner Aff. ¶ 5.)  Based on his brief look at the car and his review of Defendant's inspection and repair reports, Mr. Turner concluded that "[he] can state to a reasonable degree of mechanical certainty that [the non-starting problem] is not a normal condition for a new automobile and can be indicative of a defect in materials and workmanship" .  (*Id.* at ¶¶ 4, 8-9;

---

[2]        At the hearing, counsel for Plaintiff also indicated that although Plaintiff's car has sometimes failed to start on a random intermittent basis since August 2005, the car would in fact start provided that Plaintiff waited for some period of time before attempting to start the car for a second time.

Pl. Dep. 105:9-107:21.)  Mr. Turner also concluded that Defendant's expert improperly

dismissed information uncovered during its inspection of the car and "failed to use applicable

procedures" to diagnose the problem.  (*Id.* at ¶¶ 8-9.)  As a result, Mr. Turner believes that the

car "is likely to experience future problems" and has declined in value by $14,702, which

represents the difference between Plaintiff's purchase price and the car's current value, given its

repair history and non-starting problem.  (*Id.* at ¶¶ 10-12.)

Defendant's expert—David Hurt, Jr.—inspected the car on August 25, 2005, and found

no sign of a mechanical defect.  (Hurt Aff. ¶ 15.)  Mr. Hurt drove the car, inspected the engine,

and monitored the on-board systems with a diagnostic computer.  (*Id.* at ¶¶ 7, 11, & 13.)

Because he could not identify a defect, Mr. Hurt concluded that the car's problems arise from

Plaintiff's improper shut-down procedures.  (*Id.* at ¶ 14.)  Mr. Hurt also concluded that the car

has retained its usefulness and value.  (*Id.* at ¶ 17.)

On or about March 31, 2005, Plaintiff filed a complaint in the Circuit Court for Baltimore

County, Maryland.  On June 3, 2005, Defendant filed a notice of removal asserting, as the basis

for this Court's jurisdiction, the existence of a federal question pursuant to 28 U.S.C. § 1331.

(*See* Notice of Removal ¶¶ 2-3.)  On January 5, 2006, Plaintiff filed its Motion for Summary

Judgment.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary

judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

DISCUSSION

## I.      Plaintiff's Causes of Action.

Plaintiff asserts three causes of action against Defendant in his Complaint. In Count I, Plaintiff contends that Defendant violated the Maryland Automotive Warranty Enforcement Act, MD. CODE ANN., COM. LAW § 14-1501 *et seq.* (the "Lemon Law"). (*See* Compl. ¶¶ 12-33.) In Count II, Plaintiff alleges that Defendant violated the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. §§ 2301, *et seq.* (*Id.* at ¶¶ 34-46.) In Count III, Plaintiff contends that Defendant violated the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101, *et seq.* (*Id.* at ¶¶ 47-61.)

## II.     Plaintiff's Expert Testimony regarding Defect or Condition.

Defendant argues that it is entitled to summary judgment because Plaintiff cannot prove that his car suffers from a defective condition.[3]  (*See* Def.'s Mem. Supp. Sum. J. pp. 9-11; *see*

---

[3]        Each cause of action asserted by Plaintiff requires that Plaintiff establish that his car is defective or that any defects the car may have substantially impair its use, value, or safety. *See, e.g.*, MD. CODE ANN., COM. LAW § 14-1502(c)(1) (authorizing remedies under the Lemon Law where manufacturer is "unable to repair or correct any defect or condition that substantially impairs the use and market value of the motor vehicle. . . ."); 15 U.S.C. § 2304(a)(4) (authorizing remedies under the Magnuson-Moss Warranty Improvement Act where "the product (or component part thereof) contains a defect or malfunction after a reasonable number of attempts

*also* Def.'s Reply pp. 7-11.)  In this regard, Defendant requests that this Court disregard opinions submitted by Plaintiff's expert on the matter of an alleged defect or condition.  (*See* Def. Reply pp. 1-7.)

In this case, Plaintiff's expert did not provide an opinion with respect to the existence of an alleged defect in Plaintiff's car until *after* Defendant filed its Motion for Summary Judgment. Mr. Turner confirmed during his deposition that his opinions in this matter were limited to the issue of value:

> Q.      Do you have an opinion as to what causes the battery or vehicle to fail to start?
>
> A.       Not at this time, no.

(Turner Dep. 17: 18-20; *see id.* at 84 ("I don't have to identify a specific problem that has already been identified in the repair records.").)

> Q.      Aren't your opinions in this case as to valuation?
>
> A.       They are.

(*Id.* at 89:10-12.)  However, in an affidavit attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Mr. Turner opined that:

> The Plaintiff has experienced an abnormal intermittent condition in which the vehicle will not start.  Because this condition is intermittent it may not occur every time the vehicle is driven.  I can state to a reasonable degree of mechanical certainty that this is not a normal condition for a new automobile and can be indicative of a defect in materials and workmanship.

(Turner Aff. ¶ 4; *see also id.* at ¶¶ 8-9 (criticizing opinion offered by Defendant's expert on the

---

by the warrantor to remedy defects or malfunctions in such product. . . .).  (*See also* Compl. ¶¶ 52 & 55 (indicating that Plaintiff's claim under the Maryland Consumer Protection Act derives from his claim under the Lemon Law).)

matter of the existence of a defect or condition).)

The standard for the admissibility of scientific, technical, or other specialized knowledge

is set forth in Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the

Supreme Court held that a district court should apply Rule 702 by determining "whether the

testimony's underlying reasoning or methodology is scientifically valid and properly can be

applied to the facts at issue." *Id*. at 580.  Judges consider a number of factors in making this

determination, "including whether the theory or technique in question can be (and has been)

tested, whether it has been subjected to peer review and publication, its known or potential error

rate and the existence and maintenance of standards controlling its operation, and whether it has

attracted widespread acceptance within a relevant scientific community." *Id*.

The Supreme Court has established that the gatekeeping function performed by district

courts with respect to expert testimony based on scientific knowledge applies with equal force to

expert testimony based on technical or other specialized knowledge.  *See*, *e.g.*, *Kumho Tire Co.,

Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999) (holding that a trial court did not abuse its

discretion in applying *Daubert* to exclude expert testimony of a tire failure analyst because his

methodology of "visual and tactile examination" was unreliable).  Recently, the United States

Court of Appeals for the Fourth Circuit upheld a trial court's decision to exclude testimony from

a fire expert because the expert "fail[ed] to independently evaluate the open flame in the room" and instead relied on someone else's conclusions about the fire's cause.  *See Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005) (noting that *Daubert* aims to prevent "expert speculation.")

This Court will disregard Mr. Turner's opinion with respect to the alleged defect or condition in Plaintiff's car for two reasons.  First, the opinion offered by Mr. Turner is speculative.  Instead of opining that the car's intermittent failure to start *is* indicative of a manufacturing defect, Mr. Turner opines that this condition "*can* be indicative of a defect in materials and workmanship."  (Turner Aff. ¶ 4 (emphasis added).)  In the context of criticizing the opinion offered by Defendant's expert, moreover, Plaintiff explains that Mr. Turner is of the opinion that "further investigation should have been pursued to discover the exact nature of the malfunction so that it could have been diagnosed and repaired."  (Pl.'s Opp. p. 7.)  Mr. Turner, however, did not conduct any such investigation.  By merely opining that it is *possible* that Plaintiff's car is defective, Mr. Turner is engaging in speculation and conjecture with respect to whether the car is *in fact* defective.  As a result, Mr. Turner's opinion would not assist the trier of fact to understand the evidence in this case or to determine facts in issue.  Accordingly, this Court concludes that the opinion offered by Mr. Turner is inadmissable under Fed. R. Evid. 702. *See Daubert*, 509 U.S. at 590 ("conjecture, hypothesis, 'subjective belief, or unsupported speculation' are impermissible bases for expert opinion and must be discarded."); *see also Dildine v. Town & Country Truck Sales, Inc.*, 577 S.E.2d 882, 884 (Ga. Ct. App. 2003) ("[A]lthough Randy Dickerson testified that the Oldsmobile's cooling system *possibly* was defective on the date of purchase, a factual inference "'cannot be based upon evidence which is

too uncertain or speculative or which raises merely a conjecture or possibility.'") (emphasis in

original; quotations omitted).[4]

Second, it is well-established that an affidavit in sufficient conflict with prior deposition

testimony should be disregarded as an attempt to create a sham issue of fact:

> If a party who has been examined at length on deposition could raise
> an issue of fact simply by submitting an affidavit contradicting his
> own prior testimony, this would greatly diminish the utility of
> summary judgment as a procedure for screening out sham issues of
> fact.  A genuine issue of material fact is not created where the only
> issue of fact is to determine which of the two conflicting versions of
> the plaintiff's testimony is correct.

*Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (internal quotation marks and

citations omitted).  In this case, Mr. Turner testified during his deposition that he had no opinion

regarding the alleged defect or condition with Plaintiff's car.  However, when faced with

Defendant's Motion for Summary Judgment, Mr. Turner offered a number of opinions with

respect to the matter of a defect, including his opinion that the car's failure to start may be

indicative of a manufacturing defect and that the investigation conducted by Defendant's expert

was lacking in certain respects.  Under essentially identical circumstances, the Fourth Circuit has

---

[4]       In *McLaren v. Mercedes Benz USA*, the Superior Court of Delaware applied
*Daubert* to exclude Mr. Turner's testimony with respect to a car's alleged defect.  *See McLaren
v. Mercedes Benz USA*, No. 04C-04-019-PLA, 2006 WL 1515834 (Sup. Ct. Del. March 16,
2006) (unpublished).  In that case, Mr. Turner reported feeling vibrations that were not "some
kind of normal thing" after test-driving the car.  *Id.* at *1.  Mr. Turner did not use any instrument
or methodology to diagnose the vibrating condition.  *Id.*  Applying *Daubert*, the court held that
Turner's opinions did not arise from the scientific method, that he did not use available
instruments to test the car, and that the defendant could not refute what Turner "felt" when he
drove the car.  *Id.* at *3.  Although not entirely on point, the *McLaren* case is similar to the one at
bar.  Here, Mr. Turner has offered an opinion that is insufficient under Fed. R. Evid. 702 and
*Daubert*.  In addition, Mr. Turner did not perform diagnostic tests, drive the car, or examine it
when the battery was dead.  (*See* Turner Dep. 105:1-106:10.)

concluded that an expert affidavit was properly disregarded by the district court.  *See*

*Rohrbough v. Wyeth Lab's, Inc*., 916 F.2d 970, 975 (4th Cir. 1990) (disregarding affidavit where

expert "refused" to give an opinion during  his deposition yet "boldly gave his opinion by way of

affidavit" on the same issue months later in the context of a motion for summary judgment).  For

the reasons stated above, this Court will disregard those portions of the affidavit submitted by

Mr. Turner that relate to the alleged defect or condition in Plaintiff's car.

**III.    Resulting Sufficiency of Plaintiff's Claims.**

Having decided that Mr. Turner's opinions with respect to an alleged defect or condition

must be disregarded, this Court must determine whether any issues of genuine fact remain.

Defendant argues that it is entitled to summary judgment because Plaintiff cannot prove that a

defect exists without expert testimony.  (*See* Def.'s Mem. Supp. Sum. J. pp. 9-11; Def.'s Reply

pp. 7-11.)  This Court notes that Plaintiff does *not* dispute that expert testimony is required in

this particular case to establish the existence of a defect or condition in Plaintiff's car.  (*See* Pl.'s

Opp. pp. 6-7 & 12.)  Nevertheless, this Court considers Defendant's argument in the context of

each of Plaintiff's causes of action below.

**A.    Maryland Lemon Law Claim.**

The Maryland Automotive Warranty Enforcement Act (the "Lemon Law") requires a

manufacturer to cure any nonconformity, defect, or condition in the vehicle during the warranty

period.  *See* MD. CODE ANN., COM. LAW § 14-1502(b).  It is an affirmative defense to any claim

under the Lemon Law that the alleged nonconformity, defect, or condition "[d]oes not

substantially impair the use and market value of the motor vehicle."  *Id*. at § 14-1502(c)(3)(i).

The only evidence forecast by Plaintiff to establish that his vehicle suffers from a defect

or condition that substantially impairs its value is testimony from Plaintiff and repair records indicating that Plaintiff's car failed to start on three occasions. In this particular case, however, such evidence is insufficient for a reasonable fact finder to determine that Maryland's Lemon Law has been violated. First, a reasonable jury could not conclude on the basis of repair records and Plaintiff's testimony alone that Plaintiff's car is currently affected by an intermittent failure to start. Although the car at issue has failed to start on three occasions—in January, February, and August 2005—there has been no documented failure-to-start problem since August 2005. As a result, a jury could not determine that Plaintiff's car is currently affected by the alleged defect without engaging in the very speculation and conjecture that rendered Mr. Turner's proffered opinion inadmissible under Fed. R. Evid. 702. *See* DISCUSSION § II, *supra*. Plaintiff simply has not forecast evidence that would allow a reasonable jury to infer that his car currently suffers from an intermittent failure to start.

Second, the type of defect alleged by Plaintiff in this case—a random intermittent failure to start that may or may not currently affect the vehicle—is a matter that lies beyond the knowledge of an average person. Expert testimony is therefore required to establish the existence of this particular defect.[5] Plaintiff does not contest Defendant's contention that expert testimony is required to establish the existence of a defect or condition. (*See* Pl.'s Opp. pp. 6-7.)

---

[5]     Although there is no "bright-line" test for determining when expert testimony must be produced in order to meet a party's burden of proof or production, a useful rule of thumb is that "[i]f the trier of fact could not reasonably infer a fact essential to a party's charge, claim, or defense without favorable expert testimony, the party will fail to meet its burden of production if it fails to produce adequate expert testimony." 5 Lynn McLain, Maryland Practice: *Maryland Evidence*, State and Federal § 300.7 (1987); *see also Hardy v. Winnebago Indust., Inc.*, 706 A.2d 1086, 1094 (Md. 1998) (citing *Maryland Evidence* in the context of claims raised pursuant to the Maryland Lemon Law and Magnuson Moss Improvement Warranty Act).

In addition, Plaintiff's opposition papers assert—in the context of criticizing the investigation performed by Defendant's expert—that "further investigation should have been pursued to discover the exact nature of the malfunction so that it could have been diagnosed and repaired." (Pl.'s Opp. p. 7.)  For reasons stated above, however, this Court will disregard the opinions of Plaintiff's expert that relate to the existence of a defect or condition in Plaintiff's car.

Finally, in support of its Motion for Summary Judgment, Defendant submitted the report and affidavit of its expert, David Hurt, Jr.  (*See* Hurt Aff.)  Mr. Hurt drove the car, inspected the engine, and monitored the on-board systems with a diagnostic computer.  (*Id*. at ¶¶ 7, 11, & 13.) Mr. Hurt concluded that:

> During my inspection, I reviewed all of the vehicle's systems and found them to be in proper working order and free of any defects in material or workmanship.  It is my opinion that to a reasonable degree of mechanical certainty, there are no existing defects in material or workmanship with the vehicle.

(Hurt Aff. ¶ 15.)  As already noted, this Court will disregard the opinion offered by Plaintiff's expert Mr. Turner with respect to the existence of a defect or condition.  In addition, this Court finds that Mr. Turner's conclusory and unsupported criticisms of Mr. Hurt's investigation are insufficient to raise an issue of fact with respect to the existence of a defect.

In sum, because Plaintiff has failed to forecast sufficient evidence with respect to the existence of an alleged defect or condition, Plaintiff's cause of action under Maryland's Lemon Law fails as a matter of law.

### B.        Magnuson-Moss Warranty Improvement Act Claim.

The Magnuson-Moss Warranty Improvement Act (the "MMWA") permits "a consumer who is damaged by the failure of a supplier [or] warrantor . . . to comply with any obligation

under this chapter [15 U.S.C. §§ 2301 *et seq.*], or under a written warranty [or] implied warranty" to sue in United States district court.  15 U.S.C. § 2310(d).  To prevail on his claim under the MMWA, Plaintiff must show that (1) his vehicle has a defect in parts or workmanship; (2) Defendant was not able to remedy it in a reasonable amount of time; and (3) he suffered economic harm as a result.  *Teerling v. Fleetwood Motor Homes*, 2001 U.S. Dist. LEXIS 7481, *12 (N.D. Ill. 2001) (unpublished) (citing 15 U.S.C. §§ 2304(a)(4), 2310(d) and *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 963 (N.D. Ill. 2000).  As noted above, Plaintiff has failed to forecast evidence sufficient to establish the first element and thus his claim under the MMWA fails as a matter of law.

### C.     Maryland Consumer Protection Act Claim.

Plaintiff asserts a cause of action against Defendant based on the Maryland Consumer Protection Act (the "MCPA").  (*See* Compl. ¶¶ 47-61.)  This cause of action derives from the Maryland Lemon Law, which provides that "[a] violation of this subtitle shall be an unfair and deceptive trade practice under Title 13 of the Commercial Law Article [the MCPA]."  MD. CODE ANN., COM. LAW § 14-1504.  Plaintiff acknowledges in his Complaint and opposition papers that his MCPA claim depends on his Lemon Law claim.  (*See* Compl. ¶¶ 52 & 55; Pl.'s Opp. p. 12.)  As noted above, Plaintiff cannot prevail on his Maryland Lemon Law claim and thus Plaintiff's claim under the MCPA also fails as a matter of law.[6]

---

[6]     As a result, this Court need not address Defendant's alternative arguments for summary judgment.  This Court notes that in the context of one such argument, Defendant emphasizes a recent opinion issued by Judge Quarles of this Court: *Hickey v. General Motors Corp.*, No. 04-3324, slip op. (D. Md. July 28, 2005) (unpublished).  Although similar to the instant case in certain respects, Judge Quarles decided to strike expert testimony proffered by the plaintiff because it was unsworn and unauthenticated in violation of Fed. R. Civ. P. 56.  *See Hickey*, slip op. at p. 5.  In this case, the expert testimony proffered by Mr. Turner on the matter of the existence of an alleged cause or defect is disregarded for different reasons.  *See*

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.

A separate Order and Judgment follow.


Dated: August 22, 2005                              /s/ _____
                                                    Richard D. Bennett
                                                    United States District Judge

---

DISCUSSION § II, *supra*.